**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 23-CR-190-1 (ABJ)** |
| **v.** | |
| **ASHLEY GAUSE et al.,** | |
| **Defendants** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Ashley Gause be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (C) (Crime of Violence and Controlled Substance Offense) of the federal bail statute.   From at least May 9, 2020, through May 26, 2021, Ms. Gause and her co-conspirators orchestrated a scheme that resulted in the robberies of nine pharmacies and nine cellular retail stores throughout D.C., Maryland, Virginia, and New Jersey.   Ms. Gause's goal was to profit from the sale of the stolen pharmaceuticals or cell phones without regard for the dozens of victims left in her and her co-conspirators' wake.   She spent most of the time period between May 26, 2021, and the present incarcerated in Maryland. And just over six weeks after her release on January 26, 2023, an arrest warrant was issued for Ms. Gause based on an assault in Anne Arundel County.   Ms. Gause continues to represent a danger to the community.   And considering the factors specified under 18 U.S.C. § 3142(g), Ms. Gause cannot overcome the statutory presumptions that no condition or combination of conditions will reasonably assure her appearance in court and the safety of the community.

## BACKGROUND

On June 6, 2023, a Grand Jury for the United States District Court for the District of Columbia returned an indictment charging Ms. Gause with Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846, twelve counts of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951, and three counts of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). An initial appearance was held before the Honorable Magistrate Judge Moxila Upadhyaya on June 9, 2023.   At that hearing, the Government moved for Ms. Gause's detention pending trial.

### *The Instant Offense*

From May 9, 2020, through May 26, 2021, Ms. Gause and her co-conspirators relentlessly targeted pharmacies and cellular retail stores in the mid-Atlantic region of the country. They sought prescription drugs and iPhones that they could then resell. The indictment identifies eighteen different commercial robberies committed in furtherance of the conspiracy's goals. And for her part, Ms. Gause is charged substantively with committing the following twelve robberies:

1. A May 9, 2020, robbery of a Walgreens in Neptune, New Jersey;

2. A November, 6, 2020, robbery of a T-Mobile store in Washington, D.C.;

3. A November 9, 2020, robbery of Russel Cellular store in Washington, D.C.;

4. A November 11, 2020, robbery of a T-Mobile store in Washington, D.C.;

5. A November 12, 2020, robbery of Glen Echo Pharmacy in Bethesda, Maryland;

6. A January 12, 2021, robbery of a Verizon store in Washington, D.C.;

7. A February 14, 2021, robbery of a CVS Pharmacy in Henrico, Virginia;

8.  A March 24, 2021, robbery of Morgan Pharmacy in Washington, D.C.;

9.  A March 31, 2021, robbery of a CVS Pharmacy in Beltsville, Maryland;

10. A May 4, 2021, robbery of an AT&T store in Wheaton, Maryland;

11. A May 5, 2021, robbery of an AT&T store in Hyattsville, Maryland; and

12. A May 7, 2021, robbery of an AT&T store in Laurel, Maryland.

Additionally, the evidence indicates that Ms. Gause was directly involved in an armed robbery and carjacking that occurred in District Heights, Maryland, which is listed as overt act thirteen in Count One of the indictment. And Ms. Gause was actually convicted in the state of Maryland for her involvement in the robbery of a CVS in Pasadena, Maryland, which is listed as overt act nineteen in the indictment.

The robberies followed a similar pattern. Ms. Gause and her co-conspirators would search for target locations. Data extracted from Ms. Gause's cell phone along with cell site location information showed that for days or weeks leading up to a robbery, she would search for an ideal store to rob. For a pharmacy, this often meant looking for a store that stayed open 24 hours and that carried opioids, Adderall, and promethazine.

For example, the Walgreens in Neptune, New Jersey, which is approximately 200 miles away from where Ms. Gause lived in Washington, D.C., was robbed at 3:09 a.m. on May 9, 2020. Evidence from Ms. Gause's cell phone shows that on the day prior to the robbery, she wrote the name of a pharmacy—Hudacko's—in Bayonne, New Jersey in the "Notes" application of her device. Also, that day, text messages and cell site location information suggest that she visited a CVS in Annapolis, Maryland. For the CVS pharmacy in Henrico, Virginia, which is approximately 100 miles away from D.C., Ms. Gause went on a scouting mission approximately two and a half

months earlier, where she and another conspirator visited Henrico along with pharmacies as far away as Rocky Mount, North Carolina.

Once a target was selected, Ms. Gause and members of the conspiracy would find a car—preferably stolen or rented—to use as a getaway vehicle. For example, the vehicle used in the March 31, 2021 and April 1, 2021 robberies of CVS pharmacies in Beltsville and Manassas, respectively, was a blue Mercedes sedan. That Mercedes was stolen in an armed robbery and carjacking on March 31, 2021, at approximately 12:50 a.m., at 6421 Hil Mar Drive, District Heights, Maryland.



**Figure 1 -Ring Camera Footage Showing Three Suspects Assaulting and Robbing Victim 1, Holding Victim 1 and Victim 2 at Gunpoint While Forcefully Entering Victim 1's Residence, Firearm Highlighted in Red**

Historical cellular location data showed that at the time of the armed robbery and carjacking Ms. Gause's device was communicating with a tower in close proximity to 6421 Hil Mar Drive. Additionally, her device has a photograph of what appears to be the stolen vehicle from an hour after the robbery and has a text message attempting to sell that vehicle.

4

Once they had a vehicle, Ms. Gause would drive, along with her co-conspirators, from Washington D.C. to the location of the robbery (if the particular target was out of state). This is best exemplified by the robberies in Neptune and Henrico, which are approximately 200 and 100 miles away from the District, respectively.



**Figure 2 – Ms. Gause's cellular tower activations on May 8-9, 2020 suggesting travel from Washington, D.C. to Neptune, New Jersey immediately prior to the robbery**



**Figure 3 – Ms. Gause's cellular tower activations on February 14, 2021 suggesting travel from Washington, D.C. to Henrico, Virginia immediately prior to the robbery**

Once at the location of the robbery, she would drop off usually 2-3 of the co-conspirators and stage the vehicle so that the conspirators could make a quick getaway after the robbery was complete. The co-conspirators would enter the store and demand money and either prescription drugs or cellular phones. As shown below, the conspirators would either threaten the store clerks or pharmacists, often with weapons, physically assault them, or both.



**Figure 4 – November 6, 2020 T-Mobile Robbery**



**Figure 5 – November 12, 2020**



**Figure 6 – May 4, 2021**

After the robbery, the conspirators would return to the getaway vehicle, believed to be driven by Ms. Gause, and return to Washington, D.C.



**Figure 7 – Ms. Gause's cellular tower activations on May 9, 2020 suggesting travel from the robbery in Neptune, NJ to Washington, D.C. immediately after to the robbery**



**Figure 8 – Ms. Gause's cellular tower activations on February 14, 2021 suggesting travel from the robbery in Henrico, VA to Washington, D.C. immediately after to the robbery**

Once back in D.C., Ms. Gause would sell the proceeds of the robberies. For pharmacies, this meant selling the various controlled substances. Below is an excerpted conversation, in the days after the Neptune robbery. For reference, "30s" is likely a reference to 30 milligram dosage of Oxycodone. Furthermore, "Addies" is a common street name for the prescription-controlled substance Adderall and "IR" and "ER" are likely in reference to Adderall Immediate Release and Extended Release, respectively. Oxycodone and Adderall were among the substances reported stolen in the Neptune robbery.

| # | Date | From | To | Content |
|---|---|---|---|---|
| 1 | 9 May 2020 | -9195 | Gause | What u want for 30s |
| 2 | 12 May 2020 | -9195 | Gause | Wya |
| 3 | 12 May 2020 | Gause | -9195 | Ne |
| 4 | 12 May 2020 | -9195 | Gause | How much the 15s |
| 5 | 12 May 2020 | Gause | -9195 | 15 |
| 6 | 12 May 2020 | -9195 | Gause | Let me get 10 10s for 85? |
| 7 | 12 May 2020 | Gause | -9195 | I can't do it bro I ain't got no room |
| 8 | 12 May 2020 | -9195 | Gause | Let me get a 4 15s; I need 6 way |
| 9 | 13 May 2020 | -9195 | Gause | Way |
| 10 | 13 May 2020 | Gause | -9195 | Nomore 15's |
| 11 | 14 May 2020 | Gause | -9195 | 222 Kst sw |
| 12 | 14 May 2020 | -9195 | Gause | 20min; 6min |
| 13 | 14 May 2020 | Gause | -9195 | Bet |
| 14 | 14 May 2020 | -9195 | Gause | How much they is |
| 15 | 15 May 2020 | -9195 | Gause | Wassup crazy; Gun show tomorrow |
| 16 | 15 May 2020 | Gause | -9195 | Call me |
| 17 | 16 May 2020 | -9195 | Gause | What u got; 7.5s? |

| 18 | 16 May 2020 | Gause | -9195 | Gone |
|----|-------------|-------|-------|------|
| 19 | 24 May 2020 | -9195 | Gause | Got them Addies? |
| 20 | 24 May 2020 | Gause | -9195 | Yeah |
| 21 | 24 May 2020 | -9195 | Gause | What mg u got? Are they IR or ERAn how much |
| 22 | 24 May 2020 | Gause | -9195 | Both every mg |
| 23 | 24 May 2020 | -9195 | Gause | How much u want |
| 24 | 24 May 2020 | Gause | -9195 | Which mg u want? |
| 25 | 24 May 2020 | -9195 | Gause | How much the 10 and 20 |
| 26 | 24 May 2020 | Gause | -9195 | Call me |

Similarly, for the robberies of cellular retail stores, Ms. Gause would often text the operator of a secondary phone store and attempt to sell the phones. For example, on January 13, 2021, the day after the robbery of the Verizon store in Washington, D.C., Ms. Gause sent the owner of the phone store the following photograph, which is the box of an iPhone that was taken in the robbery the day before.



**Figure 9**

They then had the following conversation:

| Date | Time | From | To | Content |
|------|------|------|-----|---------|
| 13 Jan 2021 | 12:52 p.m. | Gause | -6665 | **Figure 9** |
| 13 Jan 2021 | 1:00 p.m. | Gause | -6665 | 4 min 5se |
| 13 Jan 2021 | 1:01 p.m. | Gause | -6665 | 4 mini |

| 13 Jan 2021 | 1:02 p.m. | -6665 | Gause | That's all ? |
| 13 Jan 2021 | 1:06 p.m. | Gause | -6665 | Yes |
| 13 Jan 2021 | 1:07 p.m. | Gause | -6665 | It wasn't what we thought |
| 13 Jan 2021 | 1:07 p.m. | -6665 | Gause | Ok what the breakdown $ |
| 13 Jan 2021 | 1:10 p.m. | Gause | -6665 | All Verizon |
| 13 Jan 2021 | 1:11 p.m. | Gause | -6665 | 3200 |
| 13 Jan 2021 | 1:11 p.m. | -6665 | Gause | How much was a piece for mini |
| 13 Jan 2021 | 1:13 p.m. | Gause | -6665 | 500 |

The robberies largely followed this pattern until May 26, 2021, when the spree came to an end at a CVS in Pasadena, Maryland. Following her normal pattern, Ms. Gause began searching for pharmacies in Anne Arundel County in Apple Maps about two hours prior to the robbery. She drove a car rented from Avis in another individual's name—a blue Volkswagen—from D.C. to the CVS, which was approximately 43 miles away. Three co-conspirators entered the CVS at 1:06 a.m. and demanded money and Oxycodone. The conspirators zip-tied the hands of a store clerk and demanded she take them to the safe. The conspirators then demanded that a pharmacist open the safe and provide them with prescription medication. The pharmacist continued to enter incorrect codes, and the conspirators forced the pharmacist to his knees and zip-tied his hands as well.



**Figure 10 - CVS Pharmacy Surveillance Footage Showing Suspect, Highlighted in Red, Grabbing Victim 2 and Forcing him on his Knees, while Victim 1 Stands in the Corner with her Hands Zip Tied**

Anne Arundel Police Department arrived as the robbery was still in progress. They encountered three suspects fleeing from the store. As they entered the parking lot, Ms. Gause sped out of the parking lot in the Volkswagen and nearly struck a marked patrol vehicle. She then fled and was pursued by law enforcement. Ms. Gause drove nearly 100 miles per hour as she led police on a nearly 44-mile pursuit. Stop sticks were deployed along the route, but Ms. Gause continued to drive after losing both front tires and the back left tire. She was eventually stopped and was arrested as the sole occupant in the vehicle.



**Figure 11 – Rental vehicle used in CVS robbery in Pasadena**

For her part in the offense, Ms. Gause pled guilty in Maryland to two counts of Robbery and false imprisonment.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).  The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community.  *See id.* As is relevant to this case, the Act provides rebuttable presumptions for cases where there is probable cause to believe the defendant committed a Controlled Substances Act offense where the maximum term of imprisonment is ten years or more or committed an offense

under 18 U.S.C. § 924(c). *Id.* § 3142(e)(3)(A), (C). "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:   (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.   *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."   18 U.S.C. § 3142(f).   Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer.   *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).   Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."   *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).   *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).   A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.   *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Because Ms. Gause is charged with a violation of 21 U.S.C. § 846 and several violations 18 U.S.C. 924(c)(1)(A)(ii), the Court must presume that no condition or combination of conditions will reasonably assure the safety of the community. A review of the 3142(g) factors makes clear

that the defense cannot overcome these presumptions.

## I.      The Nature and Circumstances of this Offense Merits Detention.

In considering the nature and circumstances of the offense, the statute specifically directs the Court to consider whether the defendant is charged with a crime of violence or offenses involved controlled substances or firearms. 18 U.S.C. § 3142(g)(1). Ms. Gause stands charged with twelve distinct crimes of violence, three counts of brandishing a firearm in furtherance of a crime of violence, and conspiring to distribute and possess with intent to distribute controlled substances. Each of these crimes, which spanned a year and hundreds of miles, left victims terrified and traumatized. In various instances, victims were pushed, punched, restrained, thrown to the ground, and held up at gunpoint.

As described by Judge Berman Jackson in *United States v. Lee*, "[t]he best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." 195 F.Supp.3d 120, 129 (D.D.C. 2016) (finding the nature and circumstances weighing heavily in favor of detention in a case where a single Hobb's Act robbery was charged). Put simply, Ms. Gause and her co-conspirators were profiting off of what was no doubt one of the worst days of these victims' lives and are lucky that no one was seriously injured.

The crimes with which Ms. Gause is charged are undoubtedly serious and the breadth of the criminal conduct is staggering. As such, the nature and circumstances of this offense weighs heavily in favor of detention.

## II.    <u>The Weight of the Evidence Against the Defendant is Formidable.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1]   The Government's case against Ms. Gause is very strong. Ms. Gause is linked to the charged offenses by location data, text messages, photographs, and forensic evidence. The location data is particularly compelling as it suggests Ms. Gause's device was in the area of each of the twelve robberies with which she is charged. Some examples are provided below.



**Figure 12 – 11/6/2020 Robbery**



**Figure 13 – 11/9/2020 Robbery**

---

[1]  While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8.   Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."   *Id.* at *10.   In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision.   *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).   The Second Circuit reached the same decision after a thorough and careful analysis of the issue.   *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.




**Figure 14 – 1/12/2021 Robbery**          **Figure 15 – 5/7/2021 Robbery**

While the location data makes the case strong, the additional information from Ms. Gause's device makes the evidence overwhelming.   Take, for example, Count Sixteen and Seventeen of the indictment, which charge Ms. Gause for her involvement in the May 4, 2021 robbery of an AT&T store in Wheaton, Maryland. The individual who went into the AT&T store—Anthony Carlos Thomas Jr.—pled guilty to the offense in the state of Maryland. Approximately two hours before the robbery, Ms. Gause sent another co-conspirator Thomas Jr.'s cell phone number and a screenshot of the AT&T store that would be robbed.



**Figure 16 – Image sent by Gause to Co-Conspirator two hours before the robbery**

Then, approximately thirty minutes prior to the robbery, Ms. Gause put the address of the store into her Waze application. Cell site location shows her device communicating with a tower in the

17

direct vicinity of the store around the time of the robbery. There were 10 instances of telephonic contact between Ms. Gause and Thomas Jr. in the hour and a half leading up to the robbery.

After the robbery, Ms. Gause sends the same cell phone store owner a text message that stated, "12 pro, 7 pro max, 5 12, 2 se." These models corresponded to the iPhones taken from the AT&T store. Finally, a distinctive firearm with a yellow "giggle switch" was used in the robbery and eventually recovered. The day after the robbery and on the day of another AT&T store robbery by Thomas Jr. using the same distinctive firearm, Ms. Gause's device captured an image of that firearm on top of a large amount of U.S. Currency.



**Figure 17 – Photograph on Gause device (left) compared to firearm recovered (right)**

The May 4, 2021, robbery evidence is representative of the types of evidence that exists against Ms. Gause. There is significant evidence that Ms. Gause committed the serious charges with which she is charged. This factor also weighs heavily in favor of detention.

III.    **The Defendant's History and Characteristics also Favor Detention.**

The third factor for the Court to consider is Ms. Gause's history and characteristics. As noted, Ms. Gause was convicted in Maryland for her involvement in the CVS robbery in Pasadena, Maryland on May 26, 2021. Her conduct, which, in addition to the robbery, included nearly striking a police vehicle, leading law enforcement on a high-speed 44-mile chase, and continuing to drive despite her tires being destroyed, should give the Court deep concern about the lengths Ms. Gause would go to in order to avoid prosecution, especially in a case where the charges and exposure are so serious.

Beyond that, Ms. Gause was released from incarceration on January 26, 2023. As indicated in the pretrial services report, she had an extraditable warrant for her arrest by March 13, 2023. The warrant is for 2nd Degree Assault and theft. According to arrest warrant,[2] Ms. Gause and another male brought a child to the home of the child's father later than was expected, causing an argument. The argument escalated, resulting in Ms. Gause, identified by her nickname "Cray," striking the victim with a closed fist, throwing the victim to the ground, and kicking her before taking the victim's phone. Much of the incident was captured on a Ring camera, which the government is providing to the Court as Exhibit 2.

This violent conduct by Ms. Gause is not unexpected based on the government's investigation. In addition to the robberies, her cell phone contained  a video from November 15, 2020, of Ms. Gause violently assaulting another individual. A copy of that video is being provided to the Court as Exhibit 3.

Moreover, in addition to Figure 17, Ms. Gause's device had numerous photographs of

---

[2] A redacted version of the warrant is attached as Exhibit 1.

firearms and controlled substances during the period of the conspiracy.



**Figure 18 – Photographs of firearms on Gause's device dated 3/5/2021, 5/21/2021, and 5/26/2021**



**Figure 19 – Photographs of controlled substances sent by Gause to a co-conspirator on March 19, 2021 and March 31, 2021, respectively**

While Ms. Gause's criminal history is concerning, it clearly understates the scope of her criminal conduct. This factor, too, weighs in favor of detention.

### IV.     <u>The Defendant Presents a Danger to Our Community.</u>

Ms. Gause is clearly dangerous. The facts of this case, along with her history and characteristics, make clear that she is someone who possesses guns, distributes controlled substances, recklessly tries to evade arrest, and commits violent crimes.

Furthermore, as noted, the charges in this case give rise to multiple presumptions that there is no combination of conditions that can assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A), (B); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (establishing that the indictment alone triggers the rebuttable presumption). These rebuttable presumptions underscore that Congress sought to treat such crimes extremely seriously, particularly in light of the mandatory-minimum terms of incarceration accompanying such transgressions.

Moreover, these presumptions shift the burden of production appropriately to the defense to rebut the presumption itself. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight" (citations omitted)); *United States v. Ali*, 793 F.Supp.2d 386, 388 n. 2 (D.D.C. 2011). Here, Ms. Gause's recent past and the facts of this case, along with her violent conduct immediately upon her placement on supervision, underscore that pretrial release puts the community at too grave a risk. For these reasons, the government submits that the Court should order the defendant's detention during the pendency of this case to protect the community.

## **CONCLUSION**

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:     /s/ *Joshua Gold*
Joshua Gold
Tx Bar No. 24103101
Cameron Tepfer
D.C. Bar No. 1660476
Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
601 D Street NW, Fifth Floor
Washington, D.C. 20530
E-mail: Joshua.Gold@usdoj.gov
Telephone: (202) 815-8965

# EXHIBIT 1

**DISTRICT COURT OF MARYLAND FOR** Anne Arundel County ____(City/County)

LOCATED AT (COURT ADDRESS)
7500 Ritchie Highway, Glen Burnie, Maryland, 21061

D-07-CR-23-019255

| COMPLAINANT | DEFENDANT |
|---|---|
| | Gause, Ashley Monique |

DEFENDANT'S DESCRIPTION:

## APPLICATION FOR STATEMENT OF CHARGES

Page 1 of 3

(Include a statement of facts within your personal knowledge (what you saw or heard, what someone said to you, etc.) showing that there is probable cause to believe that a crime has been committed and that the defendant has committed it. Please see the "NOTICE TO APPLICANT FOR A CHARGING DOCUMENT" for further information.)

I, the undersigned, apply for a statement of charges and a summons or warrant which may lead to the arrest of the above named defendant because on or about 03/04/2023 _____ at 5235 4th Street, Brooklyn, Maryland, 21225
　　　　　　　　　　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　　Place
_____ , the above named defendant

SEE ATTACHED.

(Continued on attached _____ 2 _____ pages) (DC-CR-001A)

I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.

03/08/2023
　　　Date

Officer's Signature

Cpl. Bauer #2135
　　　　　　　　Printed Name

I have read or had read to me and I understand the notice on the back of this form.

_____
　　　Date　　　　　　　　　　　　　　　　　　　　Applicant's Signature

　　　　　　　　　　　　　　　　　　　　Printed Name

Subscribed and sworn to before me __3.8.2023__ at __11:09__ ☐ AM ☒ PM
　　　　　　　　　　　　　　　　Date　　　　　　　　Time
　　　　　　　　　~~Judge~~/Commissioner_____

7083
ID Number

I understand that a charging document will be issued and that I must appear for trial ☐ on _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Date
at _____ , ☐ when notified by the clerk, at the court location shown at the top of this form.
　　　Time

☐ The applicant requests reasonable protection for safety of the alleged victim or the victim's family:

_____
　　　　　　　　　　　　　　　(Describe)
☐ I have advised applicant of the right to request shielding.　　☐ The applicant declines shielding.
☐ I declined to issue a charging document because of lack of probable cause.

_____
　　　Date　　　　　　　　　Commissioner　　　　　　　　　ID Number

DC-CR-001 (Rev. 10/2020)　　　　　TRACKING NUMBER　　　　　Printed Name

DISTRICT COURT OF MARYLAND FOR **Anne Arundel County**

(City/County)

LOCATED AT (COURT ADDRESS)
7500 Ritchie Highway, Glen Burnie, Maryland, 21061


DISTRICT COURT
CASE NUMBER

DEFENDANT'S NAME (LAST, FIRST, M.I.)
Gause, Ashley Monique

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)  Page 2  of 3

On 03/04/2023 at approximately 17:13 hours, I responded to 5235 4th Street, Brooklyn, Maryland, 21225, in reference to a fight. Upon arrival, I spoke with the reporting party, ▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉ advised on 03/04/2023 at approximately 16:55 hours, that her boyfriend's child returned home late from visiting her mother. ▉▉▉▉▉▉ yfriend/child's father was identified as ▉▉, the child was identified as ▉▉▉▉▉▉▉▉▉ and Desariah's mother was identified as ▉▉

▉▉▉▉▉▉▉▉ and the video surveillance showed the following:

▉▉▉▉▉ advised ▉▉▉▉▉▉, was returned home by a female named, "Cray," and an unknown black male passenger. "Cray" was operating a large bronze or dark-colored SUV with unknown registration plates (front and rear) and parked in the middle of the street outside 5235 4th St. "Cray" was the driver. ▉▉▉▉▉▉ returned home late with "Cray" and ▉▉▉▉ asked her why she was late. "Cray" and the unknown male passenger yelled at ▉▉▉▉▉▉ advised he heard the verbal altercation and came outside of the residence. ▉▉▉▉▉ was standing at the top of the steps to the residence and was approached by the passenger. The passenger got within reach of ▉▉▉▉▉ at the stairs and turned his back to ▉▉▉▉ as if he was going to walk away. The passenger turned back around and struck ▉▉▉▉▉ with a closed fist in the left side of his jaw. ▉▉▉▉▉ advised he was struck with such force that he fell to the ground and felt that he was almost knocked unconscious.

"Cray" and the passenger went back to the SUV to leave and ▉▉▉▉▉▉ attempted to take a picture of the license plate. ▉▉▉ was ▉▉▉▉▉ and the unknown male passenger had a verbal altercation at the front passenger side of the vehicle. ▉▉▉▉▉▉ was at the rear of the bronze SUV when "Cray" struck her several times all over her body with a closed fist. ▉▉▉▉▉ was thrown to the ground and kicked several times by "Cray" in her legs. "Cray" forcefully grabbed ▉▉▉▉▉ Apple iPhone 12 from her hand while she was on the ground during the assault and ▉▉▉▉▉ intervened. When ▉▉▉▉▉ walked to intervene, the male subject grabbed a black-colored handgun, which was observed through video surveillance and not seen in person. The male kept the gun at his side and did not point it at anyone. No direct threats were made with the firearm and the male advised ▉▉▉▉▉ to, "Get back." "Cray", the passenger, and ▉▉▉▉▉ drove off towards Cross St. with ▉▉▉▉▉ 's phone in her possession. ▉▉▉▉▉ retrieved the phone from "Cray" and returned it back to ▉▉▉▉▉ The SUV then drove off in an unknown direction.

▉▉▉▉▉ and ▉▉▉▉▉ refused any medical treatment. I observed a scratch to ▉▉▉▉▉ 's left neck area, an abrasion to the left knee, an abrasion to the right elbow, and a cut on her right thumb from being punched and kicked by "Cray". I observed a bruise and swelling to ▉▉▉▉▉ left jaw from being assaulted by the passenger. Both declined medical treatment.

"Cray" was described as a black female, approximately 25-29 years of age. "Cray" weighed approximately 160 pounds and had long dark-colored dreadlock-styled hair. ▉▉▉▉▉ believed that "Cray" was ▉▉▉▉▉ girlfriend and was sent by her based on ▉▉▉▉▉ punishing

▉▉▉▉▉ 's Apple iPhone 12 was worth approximately $900. The phone was returned to ▉▉▉▉▉ by ▉▉▉▉▉

_____
03/08/2023
Date

_____
Applicant's Signature
Cpl. Bauer #2135
Printed Name

TRACKING NUMBER

DC-CR-001A (Rev. 04/2015)



DISTRICT COURT OF MARYLAND FOR  Anne Arundel County
_____(City/County)

| | |
|---|---|
| LOCATED AT (COURT ADDRESS) | DISTRICT COURT CASE NUMBER |
| 7500 Ritchie Highway, Glen Burnie, Maryland, 21061 | |

DEFENDANT'S NAME (LAST. FIRST. M.I.)
Gause, Ashley Monique

## APPLICATION FOR STATEMENT OF CHARGES (CONTINUED)  Page 3 of 3

████████████advised ████████was taken to Ordnance Road Detention Center by "Cray" and the unknown male on 03/04/2023. Personnel at the Detention Center was contacted via telephone and advised that████████had two visitors between 02/17/2023 and 03/04/2023. The two visitors were identified as Ashley Gause and ████████████████ last visitor was Ashley Gause on 03/04/2023 at approximately 14:05 hours.

After reviewing Police Databases a check through Maryland showed only one Ashley Gause whose full name was Ashley Monique Gause ████████████████████. Further investigation showed no current license however, a check through Police Databases showed Ms. Gause had a revoked District of Columbia License (Soundex 326102). After reviewing Police Databases, Ashley Monique Gause's photograph matched the description of the Ring Video Surveillance and the description provide by████████.

On 03/06/2023 at approximately 15:47 hours, I responded to Ordnance Road Detention Center to review video surveillance. The visitor's log of ORDC showed Ms. Gause checking into visit████████on 03/04/2023 at approximately 12:55 hours. Video surveillance showed Ms. Gause and████████arrive at ORDC on 03/04/2023 at approximately 12:36 hours, in a bronze/brown-colored Nissan Armada bearing Maryland registration 3EX2605. Ms. Gause was driving at that time. Both Ms. Gause and████████were wearing the same clothing from the Ring video surveillance at 5235 4th St. during the time of the robbery. Ms. Gause and████████departed ORDC on 03/04/2023 at approximately 14:08 hours.

On 03/08/2023 I constructed a photo array with Ashley Monique Gause████████████based on my review of Police Databases, video surveillance, and the description provide by████████. On 03/08/2023 at approximately 17:43 hours, myself and Ofc. Ebert #2528 responded to 5235 4th Street in reference to the photo array. Ofc. Ebert administered the photo array and████████positively identified Ms. Gause as the suspect that assaulted and stole her phone on 03/04/2023.

I positively identified Ms. Gause as the suspect that robbed████████████████through the description provided by ████████, the Ring Video Surveillance, the Ordnance Road Detention Center Video Surveillance, and the photo array.

I'm respectfully applying for charges in reference to the assault, affray, theft, robbery, and driving on a revoked license.

All events occurred in Anne Arundel County Maryland.

| | |
|---|---|
| 03/08/2023 | *M B 2135* |
| Date | Applicant's Signature |
| | Cpl. Bauer #2135 |
| | Printed Name |

TRACKING NUMBER

DC-CR-001A.(Rev. 04/2015)