UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ASHLEY GAUSE, et al.,**<br><br>Defendants. | Criminal Case No. 23-cr-190 (ABJ) |

### GOVERNMENT'S NOTICE OF EXPERT TESTIMONY IN THE FIELD OF FIREARM AND TOOLMARK IDENTIFICATION

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the United States hereby provides notice that it may introduce the testimony of expert witnesses in the field of firearm and toolmark identification as described in the attached letter, which was provided to defense counsel on June 20, 2025.  The government will supplement these disclosures as appropriate and sufficiently before trial to provide the defense a fair opportunity to meet the evidence.  *See* Fed. R. Crim. P. Rule 16(a)(1)(G)(ii).

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:  /s/ Sarah Martin_____
Sarah Martin
Assistant United States Attorney
D.C. Bar 1612989
601 D Street NW
Washington, DC
(202) 252-6775
Sarah.Martin@usdoj.gov



U.S. Department of Justice

JEANINE FERRIS PIRRO
United States Attorney

District of Columbia

*Patrick Henry Building*
*601 D Street NW*
*Washington, DC 20530*

June 20, 2025

Carmen Hernandez, Esq.
*Counsel for Ashley Gause*
Diane Shrewsbury, Esq.
*Counsel for D'Marrel Mitchell*
Erin Scialpi, Esq.
*Counsel for Terrance Branham*
Peter Cooper, Esq.
*Counsel for Deaundre Blount*
**VIA EMAIL AND ECF**

     Re: United States v. Gause et al.
        Case No. 23-cr-190 (ABJ)

Dear Counsel,

  We are writing pursuant to Rule 16 of the Federal Rules of Criminal Procedure to provide notice that the government will call expert witnesses in the field of firearm and toolmark identification at trial in this matter.

  The government intends to call expert witnesses in the field of firearm and toolmark identification, some or all of whom work in the FBI Laboratory Firearms and Toolmark Unit (FTU) in Quantico, Virginia. They will describe the accreditation of FBI Laboratory facilities, including their discipline, Firearms and Toolmarks. FBI Laboratory facilities are accredited by the ANSI[1] National Accreditation Board (ANAB) as described on the FBI Laboratory ANAB Scope of Accreditation. The accreditation includes adherence to the ISO/IEC 17025:2017 (ISO 17025) and ANAB AR 3125 standards.

  In order to obtain their position as Physical Scientists/Forensic Examiners, the witnesses were required to successfully complete an extensive training program at the FBI Laboratory to demonstrate competency, which included written tests, practical exercises, casework-like

---

[1] ANSI stands for American National Standards Institute.

examinations, oral boards, moot court exercises, competency tests, and supervised casework. The witnesses will have successfully completed oral boards and competency tests in some or all of the following: toolmark identification, firearms identification, serial number restoration, muzzle-to-garment gunshot residue analysis, and shooting reconstruction. Since being qualified as a forensic examiner, the witnesses will have demonstrated continued proficiency in their authorized discipline(s) through successful completion of performance monitoring exercises pursuant to the Laboratory Quality Assurance Manual. The witnesses will have performed firearm and toolmark examinations in many prior criminal cases.

*Qualifications, Publications and Testimonies*

When the expert witnesses are identified, their qualifications, publications authored in the previous 10 years, as well as a list of all other cases during the previous four years in which they testified as an expert, will be contained within their Curriculum Vitae, which will be provided separately to you.

*The Witnesses' Opinions*

Once the expert witnesses generate report(s), the government will provide them to you. Specifically, the government anticipates that reports will be generated as to: (1) the test firing of the two firearms recovered in this case on April 1 and May 27, 2021, respectively; and (2) ballistics analysis to confirm the NIBIN lead generated on August 16, 2022, connecting the firearm recovered during the April 1, 2021 arrest of Defendants Branham and Neal with the firearm discharged by Defendant Neal during a domestic violence offense on June 26, 2020 (CCN 20093222).

At trial, the witnesses will provide general background information regarding firearms function testing. Function testing determines the operating condition of a firearm, which includes testing all modes of fire and safeties and determining if the firearm has been modified in any way. The witnesses will describe the process used to determine the firearm's function. Firearms are inspected for operability and safety to fire and are then test fired at the FBI Laboratory. Any modifications that are visually observed are examined to determine how the modification influences the operation of the firearm (i.e., fully automatic conversions, measuring barrel/overall length reduction, etc.).

The witnesses will testify that, with respect to firearms function, the make, model, and caliber of a firearm are normally determined by directly observing manufacturer markings on the firearm in question. When those are not present, published materials in the FBI Laboratory's Reference Firearms Collection may be used to assist in determining the make and model of the firearm. The witnesses will explain that a technical review and administrative review was conducted on their FBI Laboratory file records. The witnesses will also testify that, unless otherwise noted in their report, firearms are test fired:(1) in the condition they are received in the Firearms/Toolmarks Unit; (2) with ammunition from the Laboratory's Reference Ammunition File; (3) in a manner that allows for testing of available modes of fire such as manual safety engaged, manual safety disengaged, single action, double action, semi-automatic, fully automatic, etc. Operability and any modifications are reported in the condition the firearm was received in the Laboratory.

At trial, the witnesses will testify that test-fired cartridge casings from the firearms recovered on April 1, 2021 and May 27, 2021 were searched in NIBIN (National Integrated Ballistic Information Network) to discover if this evidence is related to other shootings in the United States. The witnesses will testify that a NIBIN lead was previously generated on August 16, 2022 after Henrico County conducted a test fire of the firearm recovered on April 1, 2021. That NIBIN lead connected the firearm to a domestic violence offense on June 26, 2020, in the District of Columbia, in which Defendant Neal unlawfully discharged a firearm.

At trial, the witnesses will testify that they searched the firearms through the eTrace database, which allows the firearms examiner to track previous reported commercial transactions involving the firearm.

At trial, the witnesses will testify that they searched the firearms' serial numbers through the National Criminal Information Center (NCIC), which identifies if a firearm has been reported lost or stolen based on the serial number.

At trial, the witnesses will testify about the process of firearm identification, which is used to potentially determine if a bullet, cartridge case, or other ammunition component was or was not fired by a particular firearm. The witnesses will explain the process of examining firearm evidence. Test fires are generated from a known firearm, if submitted, using similar ammunition to the questioned items. Microscopic comparisons are made between questioned items (bullet and cartridge cases) and known items (test fires) to determine if they were or were not fired by the submitted firearm or the same (non-submitted) firearm.

The witnesses will testify that the surfaces of a firearm, such as the breech face, firing pin or a barrel, will, because of manufacturing, augmented by subsequent wear and tear, have tiny imperfections and irregularities at the microscopic level even when manufactured to rigorous specifications. When a firearm is fired, these microscopic dents, burrs, and other minute blemishes are transferred to different parts of the fired ammunition. Observations of these phenomena form the basis of the firearm and toolmark examiner's conclusions, which will be documented in a laboratory report. Once a laboratory report(s) is generated in this case, it will be disclosed as part of discovery.

The witnesses will testify as to whether the evidentiary sample(s) in this case were o suitable for comparison and examined pursuant to the Operations Manual, Quality Assurance Manual, and applicable Technical Procedures in place at the time at the FBI Laboratory.[2]  Firearm identification is conducted by observing and cataloging class characteristics and the microscopic comparison of individual characteristics. Class characteristics of a firearm can include caliber and rifling pattern of a firearm barrel, shape of the firing pin and firing pin aperture, and orientation of extractor and ejector marks. Class characteristics of a fired bullet can include the caliber, weight, number of lands and grooves, widths of lands and grooves, and twist of lands and grooves. Class characteristics of a fired cartridge case include the caliber, shape of the firing pin and firing pin aperture, and location of the extractor and ejector marks. If class characteristics are the same, the

---

[2] The Operations Manual, Quality Assurance Manual, and applicable Technical Procedures used in this case have been produced in discovery.

examiner will move on to a second level of comparison, the individual characteristics.

Individual characteristics are imperfections and irregularities on the parts of a firearm from manufacture and use/abuse/wear and tear. Examiners use light comparison microscopy (LCM) or virtual comparison microscopy (VCM) to visually compare the questioned cartridge case or bullet to test-fired cartridge cases and bullets from a known firearm and make a final determination on whether an identification can be made. The witnesses will explain the verification procedures that were employed in this case, where another qualified firearm and toolmark examiner from the FBI Laboratory verified their comparisons and conclusions. The witnesses will further testify that, upon completion of the verification, a technical review and administrative review is conducted on the witnesses' FBI Laboratory file records.

The witnesses will describe how such comparisons were performed in this case and the limitations of the examinations. They will testify as to what possible conclusions may be reached in performing the firearm pattern examinations in accordance with the FBI Approved Standards for Scientific Testimony and Reports and the United States Department of Justice Uniform Language for Testimony and Reports.[3]

Additionally, the witnesses will testify about the process of toolmark examination, which seeks to determine if toolmarks were or were not produced by a particular tool or the same tool. Test marks are produced for comparison purposes using known tools, if submitted. Microscopic comparisons are made between questioned toolmarks and known toolmarks (test marks) to determine if they were or were not made by the submitted tool or the same tool.

The witnesses will testify that the surfaces of a tool will, because of manufacturing, augmented by subsequent wear and tear, have tiny imperfections and irregularities at the microscopic level even when manufactured to rigorous specifications. When a tool comes into contact with a substrate, these microscopic dents, burrs, and other minute blemishes are transferred to the substrate. Observations of these phenomena form the basis of the toolmark examiner's conclusions documented in the laboratory report.

The witness will testify about whether the evidentiary sample(s) in this case were suitable for comparison and subsequently analyzed pursuant to the Operations Manual, Quality Assurance Manual, and applicable Technical Procedures in place at the time at the FBI Laboratory.[4]

Toolmark identification is conducted by observing and cataloging class characteristics and the microscopic comparison of individual characteristics. Class characteristics of a toolmark can include measurable features that result from the working surface(s) of the tool, observed action(s) of the tool that produced the toolmark, and the type of tool that produced the toolmark. If class characteristics are the same, the examiner will move on to a second level of comparison,

---

[3] FBI Approved Standards for Scientific Testimony and Reports have been provided in discovery. *See* Department of Justice Uniform Language for Testimony and Reports. https://www.justice.gov/olp/uniform-language-testimony-and-reports

[4] The Operations Manual, Quality Assurance Manual, and applicable Technical Procedures used in this case have been produced in discovery.

the individual characteristics.

The witnesses will describe how such comparisons were performed, the limitations of the examinations, and what possible conclusions may be reached in performing the toolmark examinations in accordance with the FBI Approved Standards for Scientific Testimony and Reports and the United States Department of Justice Uniform Language for Testimony and Reports.[5]

*The Basis and Reasons for the Witness's Opinions*

The Physical Scientists/Forensic Examiners' opinions are based on the results of the examinations of the evidence, which will be documented in their 1A case file materials, which will be provided in discovery and are hereby incorporated by reference, as well as their training, education, experience, and expertise as Physical Scientists/Forensic Examiners. The witnesses' expert opinions, which will be set forth more fully in their report(s), and the basis for those opinions, are guided by the Operations Manual, Quality Assurance Manual, and applicable Technical Procedures, each of which will be provided in discovery and are hereby incorporated by reference. The witnesses may also rely on peer-reviewed literature to provide context to the results of the examinations.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ Sarah Martin
       Sarah Martin
       Assistant United States Attorney
       D.C. Bar 1612989
       601 D Street NW
       Washington, DC
       (202) 252-6775
       Sarah.Martin@usdoj.gov

---

[5] FBI Approved Standards for Scientific Testimony and Reports have been provided in discovery. *See* Department of Justice Uniform Language for Testimony and Reports. https://www.justice.gov/olp/uniform-language-testimony-and-reports