**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ASHLEY GAUSE**<br>**D'MARRELL MITCHELL**<br>**TERRANCE BRANHAM**<br>**DEAUNDRE BLOUNT,**<br><br>**Defendants.** | **Case No. 23-cr-190 (ABJ)** |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR LACK OF VENUE**

Defendants move to dismiss charges related to several robberies that occurred outside of Washington, D.C., claiming that these robberies are not properly venued in this District. But the charged robberies are Hobbs Act robberies, which have been recognized by our courts as "continuing crimes." And continuing crimes have special venue rules. Specifically, venue is proper for such crimes wherever the crime "was begun, continued, or completed." Each of the charged robberies was begun and completed here in D.C. Specifically, cellsite location data reflects that the defendants drove directly from D.C. to commit the robberies and then drove immediately back to D.C. This indicates that the planning and coordinating of each robbery occurred in D.C, that the defendants armed and garbed themselves in D.C., and then returned to D.C. to split the proceeds.

Moreover, venue is also appropriate here in D.C., because the charged robberies affected interstate commerce in D.C. For some of these robberies, the Government anticipates testimony at trial, that the targeted stores served D.C. customers. More broadly, however, the Government intends on proving at trial that the proceeds of these robberies were re-sold or otherwise distributed in Washington, D.C., thereby affecting interstate commerce in this District. These robberies are

1

properly venued here. As such, based on binding precedent, the firearm offenses related to those robberies are also properly venued here.

For all of the following reasons, the Court should deny Defendants' motions.

## BACKGROUND

This case involves the robbery of at least nine pharmacies and nine cellphone stores throughout D.C., Maryland, Virginia, and New Jersey, by overlapping combinations of Defendants Gause, Mitchell, Branham, and Blount from May 2020 through May 2021. Defendants move to dismiss for lack of venue each robbery that did not occur within Washington, D.C.

### *Count Three - May 9, 2020: Walgreens in Neptune, New Jersey*

At approximately 3:09 a.m., three suspects dressed in masks and gloves entered Walgreens. The suspects jumped over the pharmacy counter and demanded Codeine, Adderall, and Percocet. The suspects placed the drugs in a black plastic trash bag and a gym duffle with the number "21" on the side. The suspects removed various bottles of liquid Codeine, Oxycodone, Percocet, Adderall, and Nucynta.  Law enforcement responded and observed the suspects entering a new model black Nissan Altima four door vehicle bearing an unknown out of state registration. The suspects fled in the vehicle which was operated by a fourth masked suspect.  As the suspects attempted to flee, the suspect vehicle collided with a responding officer's patrol car and then fled the area. Law enforcement pursued the vehicle, but the suspects managed to escape.

Defendants Gause, Henderson, Blount, and Mitchell are charged in relation to this robbery.

Cellsite location data reflects devices associated with Gause and Blount traveling from Washington, D.C. to the area of the robbery in New Jersey during the evening of May 8, 2020, and then immediately back to Washington, D.C., following the May 9, 2020 robbery.  Gause's device also appears to travel the same route that the suspects used to escape police following the robbery.

Surveillance footage from the robbery reflects that one of the suspects loaded the stolen prescription drugs into a gray and black duffel back with the number "21" in yellow. Mitchell's brother wore the number "21" for the University of Maryland (UMD) basketball team, and law enforcement confirmed that the bag in surveillance matched that which would have been provided to UMD basketball players during the time period when Mitchell's brother played there. Additionally, a cellphone associated with Mr. Mitchell contains similar searches for pharmacies in South Carolina, North Carolina, Rhode Island, Pennsylvania, Virginia, Maryland, and Washington, D.C., as well as a search for "walgreens pharmacy new jersey locations."

Five hours after the robbery, Gause called a known drug distributor in the Greenleaf Gardens area of Washington, D.C. Her phone reflects a picture of her dated May 9, 2020 with Henderson and this drug distributor in what appears to be the interior of a hotel, as the three consume what appears to be "Purple Drank," a mixture containing Promethazine-Codeine. Promethazine-Codeine bottles were stolen from the Neptune Walgreens and, in fact, Gause's phone contains a video dated May 9, 2020 of a bottle of Promethazine-Codeine consistent in appearance with a bottle stolen from Neptune and apparently filmed in the same hotel. The images on Gause's phone are consistent with the interior of the Canopy Hotel at 1600 Rhode Island Avenue NW. Cellsite location data reflects that Gause's and Blount's devices were located in the vicinity of this hotel the morning of May 9, 2020.

Six hours after the robbery, while Gause's device remained in the vicinity of the Canopy Hotel, she placed a call to the drug dealer referenced above. A review of messages exchanged between Gause and this individual in May 2020 reflect that Gause regularly discussed selling this individual different narcotics, negotiating the prices, including specifically discussing the sale of one of the types of narcotics stolen from Neptune in a May 9, 2020 conversation.

### *Count Four - June 8, 2020:  CVS in Nottingham, Maryland*

At approximately 3:15 a.m., three black males ran into CVS. They were all wearing hoods, masks, and yellow gloves. One employee was thrown to the ground. Another employee was told to "empty the safe" and "give over the narcotics." The safe was not opened but the employees handed over their phones, wallets, and a bottle containing 100 hydrocodone pills. The suspects exited into a getaway vehicle. A yellow glove identical to the gloves being worn by the suspects was located on the ground behind the pharmacy and seen falling from the UMD basketball duffle bag used during the robbery.

Defendants Mitchell, Blount, and Dolford are charged in relation to this robbery.

On June 8, 2020, cellsite location data reflects that Blount's and Gause's devices were in a similar area of southwest Washington, D.C.  Blount's device then traveled from Washington, D.C. to the robbery location at the approximate time of the robbery, and then immediately back to Washington, D.C.  Seventeen minutes after the robbery, cellsite location data places Blount's and Dolford's devices in close proximity near Baltimore.  An hour after that, Blount's, Dolford's, and Gause's devices appeared to be in close proximity in southeast Washington, D.C.  Additionally, approximately two hours after the robbery, Dolford's device called a Walgreens Pharmacy in Beltsville, Maryland in an apparent attempt to identify additional targets.

Surveillance footage reflect that one of the suspects was carrying the same duffel bag from the May 9, 2020 robbery associated with Mitchell's brother.  A DNA profile developed from the glove dropped from the UMD duffel bag matched Mitchell's DNA.  Further, surveillance footage from the May 9 and June 8 robberies reflects an individual in both robberies consistent in appearance with Mr. Mitchell.

### _Count Five - June 9, 2020:  T-Mobile in College Park, Maryland_

On June 9, 2020, at approximately 12:17 PM, three suspects entered the T-Mobile located in College Park, Maryland, directed two employees to the back of the store, and stated "give me all the phones or I'll kill you.  One of the suspects directed one employee to lay on the ground while the other was forced to open the safe containing cellphones.  At least one of the suspects held a hand to his waistband as if to indicate he was armed.  The suspects stole cellphones and other accessories totaling approximately $20,226 before fleeing in a silver Volkswagen Jetta that was later recovered.

Defendants Dolford, Blount, and Mitchell are charged in this robbery.

A tracking device was hidden among the stolen items, and law enforcement tracked the device to southeast Washington, D.C. where they found the silver Volkswagen Jetta used in the robbery and matching the description of the vehicle used in the June 8, 2020 robbery.  Cellsite location data places Dolford's device in close proximity to where the vehicle was recovered after the robbery.  Additionally, Dolford called Defendant Gause multiple times while in that area after the robbery.  Records reflect that the silver Jetta had been rented by Dolford on May 28, 2020.  Further, a cellphone was left in the vehicle.  A search warrant reflects that the cellphone belonged to Blount.

A distinctive multi-colored hoodie was recovered from the Jetta.  The hoodie matched a sweatshirt observed on a suspect in the June 8 and June 9 robberies.  A DNA profile from the hoodie match Dolford's DNA.  Additionally, Dolford had posted pictures of himself on Instagram wearing the same sweatshirt and shoes that also match one of the suspects.

The silver Jetta was consistent in appearance to the vehicle used in the June 8, 2020 robbery as well as the June 9 robbery.  DNA profiles were obtained from the vehicle and evidence

recovered from inside the vehicle, including yellow and black gloves consistent with those observed on surveillance video, as well as a related vehicle. These DNA profiles match Defendants Gause, Dolford, Blount, and Mitchell.

When law enforcement responded to the area where the tracker was pinging and found the Jetta they observed individuals removing items and walking away. The tracker began moving with them. Law enforcement tracked the device a second time and found the device in a 2011 black Buick Regal. The Buick was determined to be stolen. Inside the Buick, law enforcement recovered multiple items that were stolen from the T-Mobile store, including black and yellow gloves and a UMD basketball bag. DNA profiles were developed from the evidence recovered in the Buick and the vehicle itself. On a glove similar to the one worn by the suspects, Mitchell's DNA was found.

Cellsite location data reflects that Blount and Dolford traveled from Washington, D.C. to the robbery location at the time the robbery occurred, and then immediately back to Washington, D.C. following the robbery.

### *Count Nine - November 12, 2020: Glen Echo Pharmacy in Bethesda, Maryland*

On November 12, 2020, at approximately 7:58 PM, two suspects entered Glen Echo Pharmacy in Bethesda, Maryland and ran to the back of the store where the prescription medication was located. The suspects held their hands under their clothes as if they were armed. The suspects forced two employees to the ground and demanded specific narcotics from them. After physically assaulting two of the employees, the suspects forced the employees to place narcotics in a bag. The suspects then fled in a dark Toyota consistent with the vehicle used in the November 11, 2020 robbery.

Defendants Gause and Mitchell are charged in this robbery.

Cellsite location data reflects that Gause's and Mitchell's devices were located close to each other in Washinton, D.C. before and after the robbery.  At the time of the robbery, Gause's device was in close proximity of the robbery.  While Mitchell's device appears to have been turned off at the time of the robbery, prior to the robbery, his device was moving in a direction consistent with travel to the robbery location and it's movement afterwards tracks Gause's movement.

### *Count Eleven - February 14, 2021: CVS Pharmacy in Henrico, Virginia*

On February 14, 2021, at approximately 4:36 AM, one suspect entered a CVS Pharmacy at 10901 West Broad Street in Henrico, Virginia.  After that suspect appeared to make a phone call, he was joined by a second suspect inside.  The suspects approached the pharmacy counter, with one of them brandishing a handgun, and demanded that an employee provide them codeine, hydrocodone, and oxycodone.  The suspects held one employee at gunpoint while demanding that the pharmacist open the safe and provide them with narcotics.  The suspects gathered significant quantities of narcotics, including Percocet, oxycodone-acetaminophen, hydrocodone-acetaminophen, codeine, and Adderall and then fled in a red SUV.

Defendants Gause, Mitchell, Neal, and Branham are charged in relation to this offense.

Cellsite location data reflects that Mitchell and Gause had previously driven from Washington, D.C. through North Carolina on November 30, 2020, searching for potential targets. After leaving North Carolina, Gause's and Mitchell's devices traveled to Henrico, Virginia and were in the vicinity of this CVS Pharmacy.  Gause's device reflects her searching for a pharmacy in Henrico, Virginia at the time that her and Mitchell's devices were co-located in close proximity to the robed pharmacy.  Gause's phone also contains images of Mitchell apparently taken at a mall in Henrico, Virginia.

On February 13, 2021, five hours before the robbery, Mitchell searched on his phone for a CVS pharmacy located at 10901 West Road Street, Henrico, Virginia.  At the time of the search, Mitchell and Gause's devices were located close to each other in southeast Washington, D.C.  One minute after conducting this search, Mitchell called the CVS Pharmacy in Henrico and was on the phone for seven minutes.

Surveillance footage reflects that the two suspects who entered the pharmacy are consistent in appearance and, with respect to Branham, walking impediment to Branham and Neal.  Branham who is left-handed, primarily relies upon his left hand during the robbery.  The suspect believed to be Neal is wearing a black jacket with a distinctive patch on the shoulder matching one in which Neal is pictured on his Facebook account.  The footage reflects that one of the suspects used a phone in the pharmacy prior to committing the robbery.  Call records reflect that Branham called Neal at the same time as the suspect is using a phone on surveillance footage.

Cellsite location data reflects that Gause's, Branham's, and Neal's devices traveled from Washington, D.C. early in the morning on February 14, 2021, to the location of the robbery and were present during the robbery.  The data reflects that Gause and Branham then traveled immediately back to Washington, D.C. following the robbery.  Mitchell's phone was apparently turned off during the robbery.  At the time Mitchell called the CVS Pharmacy in Henrico, however, his phone was located close to both Gause's and Branham's devices.  Shortly before Gause departed for Henrico, Gause and Mitchell exchanged multiple calls.

Four days after the Henrico robbery, Gause exchanged several messages with a known drug dealer in which she sends images of items that appear to have been stolen in Henrico and discuss pricing.

*__Count Thirteen - March 25, 2021:  Walgreens in Alexandria, Virginia__*

On March 25, 2021, at approximately 9:51 PM, two suspects entered a Walgreens Pharmacy at 4515 Duke Street, Alexandria, Virginia.  Both were wearing yellow construction vests similar in appearance to that worn by the March 24 robbery suspect.  One suspect then forced an employee behind the counter while the other stood in the aisles keeping watch.  The suspect with the store employee stated: "Give me all the money . . . oh you think I'm playing," as he reached towards his waistband indicating that he was armed."  The suspects directed the store's employees to the store's office and continued to demand money and directed the employees to open the safe. The suspects took approximately $7,000 to $10,000 from the safe before fleeing in a silver Nissan.

Defendants Neal and Branham were charged with this offense.

Surveillance video reflects that one of the suspects was using his phone during the robbery. At the time of that call, records reflect that Defendant Neal's device received a call.  Cellsite location data places Defendant Neal's device in close proximity to the robbery location. Branham's physical appearance, including the reflective vest worn in the March 24 robbery and his distinctive gait, match the appearance of one of the two suspect.

Additionally, Branham's device exchanged multiple lengthy calls with the number ending in 2439 that was in contact with members of the conspiracy in relation to other robberies.  Branham also tried to contact Gause.

*__Counts Fourteen and Fifteen - March 31, 2021:  CVS Pharmacy in Beltsville, Maryland__*

On March 31, 2021, at approximately 6:12 AM, two suspects entered the CVS Pharmacy at 11729 Beltsville Drive in Beltsville, Maryland.  One suspect went behind the counter, grabbed an employee, and demanded the code to the safe.  The two employees in the store stated that they did not know the code.  Shortly afterwards, another store employee entered the store.  A suspect

grabbed the employee and demanded the code to the safe, showing the employee a black firearm in his waistband.  The same suspect demanded that two of the employees take him to the office where the safe was located and directed the other suspect to watch the remaining employee and take money from the registers.  In the office, the suspect forced an employee to open the safe and removed the money in the safe, placing it in one of the employee's purses.  The suspects stole approximately $4,548 before fleeing in a car consistent in appearance with the carjacked Mercedes.

Defendants Gause, Branham, and Neal were charged with this robbery. The robbery vehicle was consistent with the carjacked Mercedes described above.  This vehicle ewas recovered after Branham and Neal were arrested in connection with an April 1, 2021 robbery in Manassas, Virginia.  The fob to the carjacked vehicle was recovered from Branham's person following his arrest.  Branham and Neal subsequently were charged in Virginia and subsequently pled guilty in relation to that robbery.

Surveillance footage reflects that the two suspects were consistent in appearance with Branham and Neal, including Branham's distinctive gait.  Additionally, the clothing of the suspects in this robbery are consistent with the clothing worn by Branham and Neal during the Manassas robbery.

In the few hours before this robbery, Gause's device conducted searches for CVS pharmacies located in Maryland and Virginia.  Cellsite location data reflects that between 5:17 AM and 5:49 AM, Gause's device was located in close proximity to a CVS in Laurel, Maryland. Twenty minutes before the robbery, Gause messaged the address of the robbed CVS to an individual and then used the Waze navigation application to search the address of the robbed CVS. During the robbery, Gause's device was located in close proximity to the robbery location.

Following the robbery, Gause's device then left the robbery location and traveled back to Washington, D.C.

***Counts Sixteen and Seventeen - May 4, 2021: AT&T Store in Wheaton, Maryland***

On May 4, 2021, at approximately 11:00 AM, Anthony Thomas Jr. entered an AT&T store located at 11427 Georgia Avenue, in Wheaton, Maryland. He locked the front door and forced two people to the ground at gunpoint. He was armed with a black firearm equipped with an apparent yellow machinegun conversion device. Thomas forced one of the individuals in the store to fill a backpack with iPhones and airpods before fleeing. He stole twenty-seven iPhones and two sets of airpods.

Defendants Gause and Mitchell, and uncharged co-conspirator Thomas were involved in this robbery. Thomas was charged and subsequently pled guilty to this robbery.

Two hours before the robbery, Gause messaged Mitchell sending Thomas' phone number. Thirty minutes later, Gause sent Mitchell a screenshot of a Google search result for the AT&T store at 11427 Georgia Avenue. Thirty minutes before the robbery, Gause's device used the Waze navigation application to search for the exact same store location. Gause's device was found to contain an image of a black firearm with an extended magazine and an apparent machine gun conversion device sitting on a stack of cash. This is consistent with the firearm used during the May 4, 2021 robbery as well as one subsequently recovered when Thomas was arrested following an additional robbery.

In the two-and-a-half hours leading up to the robbery, Gause and Thomas exchanged at least ten phone calls. Thomas and Mitchell exchanged one call thirty minutes before the robbery and then eight calls after. Prior to May 4, 2021, there is no record of Mitchell and Thomas communicating.

Cellsite location data reflects that Gause's and Mitchell's devices traveled from Washington, D.C. to the vicinity of the robbery during the robbery and then returned to Washington, D.C. immediately afterwards.

At 8:14 PM, following the robbery, Mitchell messaged a known girlfriend of his an image of Apple airpods still in its packaging stating: "I was going Surprise you with your head phone an all." Airpods were among the stolen items. At 11:30 PM, following the robbery, Mitchell messaged Gause "Send it." Gause responded with the contact information for the phone plug with whom she had previously negotiated. Mitchell then placed two phone calls to the phone plug's number. At 12:26 PM, Gause messaged the phone plug "12 pro, 7 pro max, 5 12, 2 se." This totals twenty-six phones. Thomas stole twenty-seven from the AT&T store.

### _Counts Eighteen and Nineteen - May 5, 2021:  AT&T in Hyattsville, Maryland_

On May 5, 2021, at approximately 11:24 AM, Thomas entered an AT&T store carrying what appeared to be a black handgun with an extended magazine and apparent yellow machinegun conversion device. Thomas pushed it against a store employee's side and said: "you already know what time it is." Thomas forced the employee to the back of the store where he made the employee fill a trash bag with iPhones and cash. Thomas fled with thirty-eight or thirty-nine iPhones and $315.

Defendants Gause, Mitchell, and uncharged co-conspirator Thomas were involved in this robbery. Thomas was charged and subsequently pled guilty to this robbery.

One hour after this robbery, Gause messaged her phone plug, "6 12pro max, 5 12pro, 7 12, 6 se, 3 12 pro mini, 10 11," an apparent reference to different iPhones. This totals thirty-seven iPhones. Thomas stole thirty-eight or thirty-nine. As noted above, Gause's phone contains an

image of cash and a firearm with a yellow machinegun conversion device consistent with that observed in the May 5 robbery and recovered following a May 7 robbery.

On May 5, 2021, Mitchell messaged an individual a picture of three individuals standing around a bag of numerous packaged iPhones in a black duffel bag. Mitchell had messaged this same individual before the March 24 Morgan Pharmacy robbery, and before and after the March 25 Walgreens Pharmacy. Branham also placed a call to this same individual as he and Gause traveled back to Washington, D.C. from Henrico, Virginia after the February 14 robbery there.

On May 5, 2021, Gause and Thomas exchanged calls at least fourteen times prior to the robbery, and once after. That same day, Gause and Mitchell exchanged calls five times prior to the robbery, and sixteen times after. Cellsite location data reflects that Gause's device was in the vicinity of the robbery in Hyattsville, Maryland during the robbery, and then traveled to Washington, D.C. immediately after the robbery.

### *Counts Twenty and Twenty-One - May 7, 2021: AT&T in Laurel, Maryland*

On May 7, 2021, at approximately 10:30 AM, Thomas entered an AT&T store at 14700 Baltimore Avenue in Laurel, Maryland. He removed a handgun from his waistband and forced the two store employees to the rear of the store at gunpoint. He then forced the employees into the inventory room and directed an employee to put all the iPhones and airpods into a plastic bag. He also demanded that the employee open the safe. Thomas placed the stolen goods into a plastic container and began dragging it to the front of the store.

As he exited the store, Thomas was immediately confronted by law enforcement. He dropped the property and fled. Thomas carjacked a vehicle and attempted to drive away at high speed, before crashing into another vehicle carrying an elderly couple who were both hospitalized as a result. Thomas was arrested and ultimately pled guilty to this and the other robberies outlined

above.  When he was arrested, Thomas was carrying the black handgun with an extended magazine and yellow machinegun conversion device which was used in the May 4, May 5, and May 7 robberies.  An image of what appears to be the same firearm was recovered on Gause's phone dated May 5, 2021.

Cellsite location data reflects that Gause's device traveled from Washington, D.C. to the robbery location, remained there during the robbery, and then immediately traveled back to Washington, D.C. following the robbery.

Defendant Gause and uncharged co-conspirator Thomas were involved in this robbery. Thomas was charged and subsequently pled guilty to this robbery.

## ARGUMENT

"Proper venue in criminal proceedings was a matter of concern to the Nation's founders," who protested in the Declaration of Independence that King George III "transport[ed] colonists 'beyond Seas to be tried.'" *United States v. Cabrales*, 524 U.S. 1, 6 (1998) (quoting The Declaration of Independence, para. 21 (1776)). To put an end to such practices, the Constitution protects criminal defendants' venue rights not once but twice. U.S. Const. art. III, § 2, cl. 3 provides that "Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed," and the Sixth Amendment guarantees a trial "by an impartial jury of the State and district wherein the crime shall have been committed."  Mirroring that constitutional language, Rule 18 of the Federal Rules of Criminal Procedure dictates that "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

To determine whether venue is proper, the Court looks to "the *locus delicti*" (that is, the scene of the crime), which "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Morgan*, 393 F.3d 192, 196 (D.C. Cir.

14

2004) (quotation marks and citation omitted). The Court "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* (quotation marks and citation omitted).

For some types of charges, however, "[v]enue may be proper in more than one district," *United States v. Lam Kwong-Wah*, 924 F.2d 298, 301 (D.C. Cir. 1991) (citation omitted). This is the case where "the acts constituting the crime and the nature of the crime charged implicate more than one location." *United States v. Lange*, 834 F.3d 58, 68 (2d Cir. 2016) (quotation marks and citation omitted). For such "continuing offenses," venue is proper where the offense "was begun, continued, or completed." 18 U.S.C. § 3237(a); *see also United States v. Chin*, 981 F.2d 1275, 1278 (D.C. Cir. 1992) ("It is well established that continuing offenses may be prosecuted in any district in which they 'continued.'"). At trial, "[t]he government bears the burden of establishing by a preponderance of the evidence that venue is proper." *Lam Kwong-Wah*, 924 F.2d at 301 (citation omitted).

Each of the substantive robberies is charged as a violation of 18 U.S.C. § 1951, that is, a Hobbs Act robbery. And, as courts have regularly found, a Hobbs Act robbery is a continuing offense. *See, e.g.*, *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012) (finding that a Hobbs Act offense is a continuing offense); *United States v. Bowens*, 224 F.3d 302, 313 (4th Cir. 2000) (same); *United States v. Jones*, 786 F. App'x 907, 911–12 (11th Cir. 2019) (same); *United States v. Carpenter*, 819 F.3d 880, 891 (6th Cir. 2016) (same), *rev'd on other grounds, Carpenter v. United States*, 138 S. Ct. 2206 (2018); *United States v. Thompson*, No. 07-cr-30022, 2008 WL 2127852, at *3 (W.D. La. May 19, 2008) (same); *United States v. Ashley, No. 420CR318ALMKPJ1*, 2022 WL 4091965, at *2 (E.D. Tex. July 5, 2022), *report and*

*recommendation adopted*, No. 420CR318ALMKPJ1, 2022 WL 4084423 (E.D. Tex. Sept. 6, 2022) (same).[1]

Because a Hobbs Act robbery is a continuous offense, it may be prosecuted in any district where the offense where the offense "was begun, continued, or completed."  18 U.S.C. § 3237(a). Venue for a Hobbs Act is also appropriate in any district where interstate commerce is affected. *See Davis*, 689 F.3d at 186 ("Because the Hobbs Act criminalizes a particular type of robbery— i.e., one that obstructs, delays, or affects commerce, venue for a substantive Hobbs Act charge is proper in any district where interstate commerce is affected or where the alleged acts took place.") (internal quotations and citations omitted); *see also United States v. Bowens*, 224 F.3d 302, 313 (4th Cir. 2000) ("[I]n a prosecution under the Hobbs Act, venue is proper in any district where commerce is affected because the terms of the statute itself forbid *affecting commerce* in particular ways.")

Each of the charged robberies began and was completed in this district.  Cellsite evidence from each of the robberies indicates that for every one of the robberies occurring outside of the District, the Defendants traveled from Washington, D.C. to the robbery location and then immediately returned to Washington, D.C. This necessarily means that the defendants planned and made important decisions as to each of the robberies while in Washington, D.C.  Each defendant decided the clothes to wear, gear to bring, where to meet, when to leave, and every other detail of

---

[1] Defendants do not engage with any of the case law indicating that a Hobbs Act robbery is a continuing offense, instead narrowly focusing on an "essential conduct elements" analysis.  *See* ECF 164 at 3-4.  But the cases they cite all deal with different types of charges that do not appear to be of a continuous nature, or at least were not analyzed by the respective courts as such.  *See United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011) (securities fraud); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1189 (2d Cir. 1989) (sale of adulterated apple juice); *United States v. Morgan*, 393 F.3d 192, 198 (D.C. Cir. 2004) (receipt of stolen property).

these robberies while in Washington, D.C. Indeed, for some of the robberies, such as the Henrico robbery, cellsite location data reflects that the defendants searched the robbery location or even called the robbery location while in Washington, D.C., prior to the robberies. Similarly, cellsite location data also reflects that the defendants returned to Washington, D.C. with the proceeds of their robberies. There, they necessarily divvied up the proceeds of each robbery, in essence completing the robbery in Washington, D.C.[2]

Courts have repeatedly found that this type of conduct is sufficient to establish venue in a district in the context of a Hobbs Act robbery. For example, in *Jones*, the Eleventh Circuit affirmed a trial court's decision denying a motion for judgment of acquittal on similar facts. 786 Fed. App'x at 911-912. There, the defendant was charged in the Middle District of Alabama with respect to Hobbs Act robberies occurring in Georgia. *Id.* The evidence, specifically cellsite, indicated that the defendant and a co-conspirator committed series of robberies in Alabama and then continued into Georgia, committing an additional two robberies. *Id.* The Circuit found that based on this evidence, the jury "could have determined reasonably that [the defendant] armed himself with a gun while at his residence in Tuskegee, Alabama, traveled with his accomplice from Alabama to Georgia with the intent to commit a robbery, and then traveled back to Alabama after each robbery was committed." This evidence supported the determination that "it was more likely than not that

---

[2] While it has not been explicitly recognized in the context of a Hobbs Act robbery, our courts have long recognized that asportation is a necessary component of a robbery. That is, a robbery is not legally complete until a defendant has successfully carried away the proceeds and reached a place of relative safety. *See generally Carter v. United States*, 223 F.2d 332, 334 (D.C. Cir. 1955) ("appellant recognizes, as he must, that so long as the essential ingredient of asportation continues, the crime of robbery is still in progress"). As the D.C. Circuit explained in *Carter*, "[t]hough the crime of robbery is complete with only a slight asportation, yet, if the carrying away is in fact a long distance, the crime is still in process of commission if pursuit of the robber is immediately begun and continued without interruption until the flight has carried the perpetrator to a place of seeming security, or until uninterrupted pursuit is no longer continuously active."

[the defendant]—while in the Middle District of Alabama—engaged in affirmative acts in furtherance of the charged robbery and firearm offenses and did so with the intent of facilitating the commission of those offenses." *Id.* at 911-912.

Similarly, in *Carpenter*, the Sixth Circuit found venue was appropriate in the Eastern District of Michigan despite the fact that the charged Hobbs Act robbery occurred in Warren, Ohio. 819 F.3d at 891. There, the defendant had recruited co-conspirators in Michigan, "described for them the robbery's general scheme, and from there drove them to Ohio," in addition to arranging for a gun to be provided to the robbers while in Michigan. *Id.* Based on these facts, the Circuit found that venue was appropriate in the Eastern District of Michigan. *See also United States v. McIntosh*, No. 14-1908, 2023 WL 382945, at *2 (2d Cir. Jan. 25, 2023) (finding venue appropriate for a Hobbs Act robbery where a defendant "took substantial steps toward the completion of the . . . robbery in the Southern District, including meeting with and recruiting co-conspirators, gathering weapons beforehand, and dividing the proceeds of the robbery."); *United States v. Davis*, 689 F.3d 179, 190 (2d Cir. 2012) (finding that a call made from the Southern District of New York by a defendant to co-conspirators asking for assistance in a robbery was sufficient to establish venue)

Additionally, the Government intends on proving at trial that interstate commerce was affected by these robberies in Washington, D.C. "Venue under the Hobbs Act is proper in any district where commerce is affected," and "[a] minimal impact on commerce is sufficient to satisfy the venue element of the Hobbs Act." *See United States v. Mohamadi*, 461 F. App'x 328, 335 (4th Cir. 2012), *judgment entered*, No. 10-4704, 2012 WL 5954178 (4th Cir. Aug. 17, 2012) (finding that a robbery of a prostitution business was properly venued in the Eastern District of Virginia where there was evidence that the stolen proceeds re-entered that district).

18

For example, following the May 9, 2020 robbery, the defendants returned to Washington, D.C., where they went to a hotel room and appeared to consume some of the stolen pharmaceuticals.  By consuming stolen pharmaceuticals from outside D.C., inside D.C., the Defendants were impacting commerce in D.C. in that the stolen pharmaceuticals could have been, but were not, purchased from D.C. pharmacies. Additionally, while in the vicinity of the same hotel, Defendant Gause called a known drug dealer who distributed drugs in Washington, D.C. Based on this evidence, a reasonable juror could determine that these drugs were being resold in Washington, D.C., therefore affecting commerce in Washington, D.C.  The same is true following the Henrico robbery, where Gause texted a different known D.C.-based drug dealer, while in D.C., and negotiated prices for drugs consistent with those that had been stolen.  Indeed, a reasonable juror could find that given the explicit nature of these messages, Gause was regularly selling drugs from these robberies in Washington, D.C., therefore affecting commerce in Washington, D.C.

The same inference exists with respect to the cellphone store robberies.  Forty minutes after the November 6, 2020 T-Mobile robbery, Mitchell was photographed outside the shop of a known cellphone re-seller.  This individual is saved in Gause's phone with emojis identifying this individual as her "phone plug." Five minutes after the November 11, 2020 T-Mobile robbery began, Gause was communicating with the same phone plug.  A day after the January 12, 2021 Verizon robbery, Gause communicated even more explicitly with the phone plug, describing specific Apple products for apparent sale, and sending an image of an iPhone in the packaging that matches one stolen from that store.  An hour-and-a-half after the May 4, 2021 robbery of an AT&T store, Gause had a similar conversation with the phone plug.  She did the same following the May 5, 2021 robbery of the AT&T store.  A reasonable juror could find based on this that all of the

19

cellphone robberies affected interstate commerce in Washington, D.C., given the defendants' re-sale of these devices in Washington, D.C.

In addition to the fact that each of the charged offenses began and ended in Washington, D.C., and that the proceeds of the robbery affected interstate commerce, the Government also anticipates proving at trial that D.C. residents made use of certain of these stores. This is particularly true for the stores in close proximity to Washington, D.C., such as the T-Mobile in College Park, Maryland, the Glen Echo Pharmacy in Bethesda, Maryland, the Walgreens in Alexandria, Virginia, the AT&T store in Wheaton, Maryland, and the AT&T store in Hyattsville, Maryland. *See, e.g.*, *United States v. Molina*, 19-CR-449-3 (NSR), 2021 WL 4319570 (S.D.N.Y. Sept. 23, 2021) (finding testimony that a robbed store "served customers residing in the Southern District of New York, and pooled operational resources, including inventory and staff, with Cellular Sales stores located in the Southern District of New York" sufficient to support venue); *United States v. Jianjun Liu*, 515 F. App'x at 51 (2d Cir. 2013) (finding 'testimony explaining the bus company's customer base and ticket sales in the Eastern District of New York [ ] sufficient for the District Court to find that the conduct with which [the defendant] was charged affected interstate commerce in that district").[3]

Because venue is proper for each of the charged substantive robberies, binding precedent holds that venue is appropriate for each related violation of 18 U.S.C. § 924(c). As the Supreme Court has held, "[w]here venue is appropriate for the underlying crime of violence, so too it is for

---

[3] Defense counsel suggests that it has not been provided discovery regarding the potential impact on Washington, D.C. commerce. *See* ECF No. 164 at 6. All of the above facts have been made available to defense counsel through discovery, including a detailed grand jury presentation, as well as express references in filings. The only exception is the mundane and logical inference that businesses located close to D.C. service D.C. customers.

the § 924(c)(1) offense." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 282 (1999). Therefore, all of the challenged charges are properly brought in this District.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should deny Defendants' motion to dismiss for lack of venue.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:        */s/ Cameron A. Tepfer*
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov