UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   Case No.  23-cr-00190-1 (ABJ) |
| | * |
| ASHLEY GAUSE | * |

ooOoo

**GAUSE REPLY TO GOVERNMENT SECOND SUPPLEMENT IN OPPOSITION
TO DEFENDANTS' MOTION TO SUPPRESS CELLPHONE EVIDENCE**

The government's Second Supplement (ECF 251) makes several arguments that are not supported by the facts or the law.

First, the government seeks to justify S/A Protafka's sweeping review of the unscoped extraction of the phone seized from Ashley Gause that he received from Anne Arundel ("AA") County by arguing that the agent was simply scoping the extraction. That argument is not supported by the evidence. S/A Protafka did not testify that he was scoping the AA extraction or otherwise limiting his review. He testified that he reviewed the extraction in its entirety because AUSA Nelson had told him that he did not need a separate warrant to look for evidence related to the Hobbs Act robberies he was investigating. AUSA Nelson's "proffer" does not contradict S/A Protafka's testimony.

> AUSA Nelson recalls a conversation with S/A Protrafka about whether or not Special Agent Potrafka needed to obtain a separate search warrant to review the contents of the digital extraction provided by Anne Arundel, but he does not recall when that conversation took place.

Gov Second Supp, Ex. 1 (ECF 251-1). Notably, the Nelson proffer does not describe the substance of the conversation nor deny S/A Potrafka's sworn testimony that Nelson told him he did not need a separate warrant.

Second, the government next claims that the scoping process "necessarily" required S/A Potrafka to review the entirety of the AA extraction because law enforcement "does not have a software program that automically narrows – or "scopes" the data from a cellphone extraction." Gov Second Supp at 9. That is simply not accurate. Indeed, Cellebrite, which is the standard tool used by the government allows the user to limit the scope of any report by date, type of data, and other parameters.[1] Indeed, the government's scoping arguments are unavailing.[2]

Third, the government also inaccurately claims that the federal warrant issued in this case did not rely on any information from the AA extraction.[3] However, the phone number (907-802-7885)

---

[1] *See United States v. Powers*, No. 1:21-CR-00008-TMB-MMS, 2025 WL 2408711, at *8 (D. Alaska Aug. 20, 2025) (categories in a Cellebrite report may be tailored to "to comply with the scope of a search warrant")*; United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1179 (9th Cir. 2010) (en banc) (per curiam), overruled in part on other grounds as recognized by *Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam) ("The process of sorting, segregating, decoding and otherwise separating seizable data (as defined by the warrant) from all other data should also be designed to achieve that purpose and that purpose only. Thus, if the government is allowed to seize information pertaining to ten names, the search protocol should be designed to discover data pertaining to those names only, not to others, and not those pertaining to other illegality. For example, the government has sophisticated hashing tools at its disposal that allow the identification of well-known illegal files (such as child pornography) without actually opening the files themselves."). In addition, a "taint" agent not involved in the investigation may be tasked with an initial review to comply with the scope of a warrant.

[2] The federal warrant was unambiguous. It does not provide authority to search an extraction performed by another law enforcement entity. The warrant is limited to the phones themselves. It was unreasonable to go beyond that scope in executing the federal search warrant. The government's arguments are reasonable only if the law and facts are ignored. *See, e.g, United States v. Ray*, 141 F.4th 129, 137, 141 (4th Cir. 2025); *see also United States v. Powers*, No. 1:21-CR-00008-TMB-MMS, 2025 WL 2408711, at *14 (D. Alaska Aug. 20, 2025) (finding that Cellebrite extraction exceeded the scope of the warrant).
.

[3] ECF 251 at 12.

assigned to TARGET DEVICE 1, was the critical link to the probable cause set out in the Affidavit.[4] And the fact that the assigned number for TARGET DEVICE 1 was that 907 number was only known by the FBI because the number was contained in the AA extraction.

At the time Anne Arundel law enforcement seized an Apple iPhone on May 26, 2021, they were not aware what phone number was associated with that device. That is clear from the fact that the two warrants obtained by the AA authorities did not mention the 907 number, either in the Applications nor in the signed Warrants. *See* Applications and Warrants.[5] The phone number associated with the device would only have come to light once the phone's contents were extracted.

The critical nature of the 907 number to the probable cause for the federal warrant that authorized a search of the Apple iPhone is clear from a review of the Affidavit submitted by AUSA Nelson to the Court. It is the association of the 907 number to the device that thrusts the investigation forward by linking the device to the cell tower data and the Anne Arundel robbery. The Affidavit explicitly states that the presence of Target Device 1 "provides probable cause." Implicitly the 907 number associated with Target Device 1 is what provides the link and the probable cause, not just to Ms. Gause's phone but to the three other devices.

---

[4] *See* Affidavit in Support of an Application under Rule 41 For a Warrant to Search and Seize (ECF190-1 at 7-25).

[5] The two Anne Arundel Applications and Warrants are found at ECF 190-2 at 1-8 and ECF 190-3 at 1-9.

In pertinent part, the Affidavit states:

### Transfer of Phones to FBI by Anne Arundel Police Department

23.     Your affiant is aware that the assigned phone number for TARGET DEVICE 1, which was seized from Gause incident to her arrest, is *(907) 802-7885*.

### Federal Investigation of Related Hobbs Act Robberies

. . .

25.     Given the similarity between the CVS robbery described above, which resulted in the seizure of the TARGET DEVICES, and the Hobbs Act Robberies under investigation, your affiant reviewed the data provided pursuant to 20-SC-3123 [cellular tower data] to determine whether TARGET DEVICE 1, *with assigned phone number (907) 802-7885, was present during any of the other Hobbs Act Robberies.*

26.     As noted in more detail below, your affiant's review of the data provided pursuant to 20-SC-3123 revealed that *TARGET DEVICE 1 utilized AT&T cellular towers in the location of five (5) Hobbs Act robberies being investigated by your affiant at or around the times that those robberies took place.*

   *A. November 6, 2020, Robbery of T-Mobile, 721 D St. SE*

. . .

29.     *TARGET DEVICE 1 utilized the AT&T* cell tower closest to that store at 2:10pm, approximately 15 minutes prior to the robbery.

30.     *TARGET DEVICE 1 utilized the AT&T* cell tower closes to that store again at 2:31pm – while the robbery was ongoing.

31.     Your affiant respectfully submits *that this information provides probable cause to believe that the person utilizing TARGET DEVICE 1* was serving as the driver for the UNSUBS on November 6, 2020, in the same way that Guase (sic) was serving as the driver for Mitchell and Brown on May 26, 2021.

  *B. November 9, 2020, Robbery of Verizon Wireless 5252 Wisconsin Ave. NW*

. . .

34.     *TARGET DEVICE 1 utilized the AT&T cell tower* closest to that store at 1:13pm, approximately two minutes prior to the robbery.

35.     Your affiant respectfully submits that *this information provides probable cause to believe that the person utilizing TARGET DEVICE 1* was serving as the driver for the UNSUBS on November 9, 2020, in the same way that Guase (sic) was serving as the driver for Mitchell and Brown on May 26, 2021.

### C. November 11, 2020, Robbery of T-Mobile, 2460 Market St. NE

. . .

38.     *TARGET DEVICE 1 utilized the AT&T cell tower* closest to that store from 11:21am through 12:36pm – from four minutes before the robbery began until approximately 68 minutes after the robbery ended.

39.     Your affiant respectfully submits that *this information provides probable cause to believe that the person utilizing TARGET DEVICE 1* was serving as the driver for the UNSUBS on November 11, 2020, in the same way that Guase (sic) was serving as the driver for Mitchell and Brown on May 26, 2021.

### D. November 12, 2020, Robbery of Glen Echo Pharmacy, 7311 Macarthur Blvd., Bethesda, Maryland

. . .

42.     *TARGET DEVICE 1 utilized the AT&T cell tower* closest to the pharmacy at 7:50pm – approximately eight minutes before the robbery.

43.     *TARGET DEVICE 1 utilized the AT&T cell tower* closest to the pharmacy again at 8:00, 8:01, and 8:12pm – as the UNSUBS were leaving the store, and approximately one and twelve minutes after the robbery, respectively.

44.     Your affiant respectfully submits that *this information provides probable cause* to believe that the person utilizing TARGET DEVICE 1 was serving as the driver for the UNSUBS on November 12, 2020, in the same way that Guase was serving as the driver for Mitchell and Brown on May 26, 2021.

### E. November 17, 2020, Attempted Robbery of AT&T Store, 5301 Wisconsin Avenue NW

. . .

48.     *TARGET DEVICE 1 utilized the AT&T cell tower* closest to the store at 5:52pm and 5:58pm – approximately eight and two minutes before the robbery respectively.

49.     *TARGET DEVICE 1 utilized the AT&T cell tower* closest to the store again at 6:58pm – approximately one hour after the robbery.

50.     Your affiant respectfully submits that *this information provides probable cause* to believe that the person utilizing TARGET DEVICE 1 was serving as the driver for the UNSUBS on November 17, 2020, in the same way that Guase was serving as the driver for Mitchell and Brown on May 26, 2021.

**CONCLUSION**

51.     Since TARGET DEVICE 1 was present in the area of all of the robberies described above, your affiant respectfully submits that there is probable cause to believe that TARGET DEVICE 1 will contain evidence of Hobbs Act Robberies.

52.     *Since TARGET DEVICES 2, 3, and 4 were all discovered with TARGET DEVICE 1, your affiant respectfully submits that there is probable cause to believe* that TARGET DEVICES 2, 3, and 4 will also contain evidence of Hobbs Act Robberies.

53.     Your Affiant submits that *this affidavit supports probable cause* to support a search warrant authorizing the examination of the TARGET DEVICES, which are described in Attachment A, to search the items described in Attachment B, for violations of the TARGET OFFENSES.

Affidavit in Support of Warrant (ECF 190-1 at 19-24) (emphasis added).

Indeed, the critical and extensive use by the FBI of the Anne Arundel extraction of the Gause phone is also made clear by the fact that less than 24 hours after the federal warrant for the 4 devices was signed, the FBI was able to issue a 17-page Tactical Intelligence Report (TIR, 11/20/21) which is based, in part, on an "exploitation of Ashley Gause's devise."[6]  The TIR also states that "Ashley Gause's device . . . identifies the following associates: Ashawntea Henderson, D'Marrell Mitchell, Glenn Dolford, Abass Bawa, Anthony Carlos Thomas Jr., Floyd Johnnie Neal, Terrance Branham, and Hassan Graves." TIR, Executive Summary.  The TIR also contains a number of images which are described as having been found on the "Gause device."

It is difficult to believe that all this information was gleaned by S/A Potrafka in less than 24 hours after the signing of the federal warrant and put together in a report, with multiple recommendations for future action.  Surely, it was the "exploitation of the Ashley Gause" device that

---

[6] The federal warrant was signed by Magistrate Judge Meriwather at 4:55 pm on November 19, 2021.  (ECF 190-1 at 2).  Based on the government's request during the hearings that FBI documents not be placed on the public docket, the TIR will be submitted to the Court separately.

had been obtained from the Anne Arundel extraction that yielded so much investigative fruit and was critical to the probable cause finding.

## CONCLUSION

Wherefore, Ms. Gause respectfully requests that this Honorable Court consider the facts and arguments set forth above and that may be presented at the hearing and grant her Motion to Suppress.

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**

Bar No. MD03366
7166 Mink Hollow Road
Highland, MD 20777
(240) 472-3391; (301) 854-0076 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Motion was served on all counsel of record via ECF this 1st day of September, 2025.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**