IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United State of America

v.   Case No. 1:23-CR-190-ABJ-2

D'Marrell Mitchell

### D'Marrell Mitchell's Opposition to Government's Motion to Reconsider[1]

The government moved the Court to reconsider three text conversations and three photographs and accompanying metadata related to Mitchell: exhibits 1990.1, 1990.3, 1997.2, 2059 – 2059.1 ("2059"), 2073 – 2073.1 ("2073"), and 2087.1 – 2087.3 ("2087"). Contained within the same motion are several arguments about exhibits on which the Court reserved ruling or that indicated that its rulings were subject to additional information. Mitchell responds only to the government's arguments to reconsider exhibits 2059, 2073, and 2087 related to him.[2] He takes no position on the admissibility of the other exhibits given the new information provided by the government.

### A. Brief summary of relevant facts and procedural posture

Mitchell is charged in a variety of robberies as a principal or as an aider and abettor. In none of the robberies that Mitchell acts as a principal (where he is physically present during the robbery) did any individual use a gun. He is charged as aiding and abetting other robberies that involved firearms by being involved in the planning of the robberies or disposing of some of the property after the fact. Mitchell concedes his guilt with respect to

---

[1] Mr. Mitchell presented similar arguments and relevant case law on the question of reconsideration in his preemptive motion filed at ECF No. 288. He will not repeat those arguments here.
[2] Mr. Mitchell does not object to the admission of the text message exhibits as now redacted and explained by the government.

1

most of the charges and to every robbery in which the government has alleged that he was physically present within the robbery.

The government filed its notice of proposed Rule 404(b) evidence June 20, 2025. That notice included several pictures of firearms from Gause's device showing her in possession of firearms. However, the government did not notice any photographs of firearms from Mitchell's device. Mitchell timely responded on July 4, 2025. The government provided its objectionable 303-page PowerPoint which included proposed exhibits 2073 and 2087 on August 8, 2025. Mitchell filed a motion to exclude those photographs and the metadata on August 18, 2025, prior to the Court holding a pretrial conference on the Rule 404(b) evidence. The government did not respond in writing but argued orally to allow for the introduction of these exhibits. The Court held several days of pretrial conferences spanning a few weeks prior to trial beginning, during which the Court resolved nearly every objection to the government's exhibits. Ultimately, the Court entered an order on September 12, 2025, resolving most of the objections, including the objections to exhibits 2073 and 2087, which the Court excluded. The government did not move to reconsider in a timely fashion. Trial began with opening statements on September 16, 2025. The government waited until September 28, 2025, after two weeks of testimony, to move to reconsider.

**B.  Relevant legal standard**

Contrary to the government's motion, there is no "standard adopted by this Circuit" governing motions to reconsider. Dkt. 294 at 1. Courts in this District have used the "as justice requires" standard as well as the standard articulated in Fed. R. Civ. P. 59(e). *See United States v. Sunia*, 643 F. Supp. 2d 51, 60-61 (D.D.C. 2009) (discussing the two approaches used in the district). The "as justice requires" standard urges courts to look at:

> Whether the Court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider

> controlling decisions or data, or whether a controlling or significant change in the law has occurred.

*Sunia*, 643 F. Supp. 2d at 60 (cleaned up). The standard adopted by Fed. R. Civ. P. 59(e) requires a movant to show "an intervening change in controlling law, [that] there is new evidence, or [that] there is a need to correct clear error or prevent manifest injustice." *See United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. 2006). *See also United States v. Christy*, 739 F.3d 534 (10th Cir. 2014) (adopting this standard for motions to reconsider in criminal cases).

Under either standard, a presumption against reconsideration exists. "[W]here litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *See Sunia*, 643 F.Supp.2d at 61. These considerations also must account for reasonable reliance on prior court orders, especially as a case progresses:

> Courts have recognized the general proposition that the decision whether to reconsider an earlier ruling is properly affected by the stage the proceeding has reached. Stability becomes increasingly important as the proceeding nears final disposition, supporting refusal to reopen issues that could cause further delay or confusion. . . *Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling* . . . . (emphasis added)

Law of the Case—Trial Courts, 18B Fed. Prac. & Proc. Juris. § 4478.1 (3d ed.). *See also Sunia*, 643 F. Supp. 2d at 61 ("while the law of the case doctrine does not necessarily apply to interlocutory orders, district courts generally consider the doctrine's underlying rationale when deciding whether to reconsider an earlier court decision").

Generally, the law of the case doctrine protects reliance on prior rulings, even if the court finds its prior rulings were incorrect or that it would decide the same issue the other way. *See Colvin v. Keen*, 900 F.3d 63, 70 (2d Cir. 2018) ("if the change of ruling had prejudiced the plaintiff, LOTC would have counseled the district court to maintain its initial, incorrect,

3

ruling despite the likelihood of reversal") (citing *Priso v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999)). And "reliance interests become more important as the opportunities to adjust to change diminish." Law of the Case—Trial Courts, 18B Fed. Prac. & Proc. Juris. § 4478.1 (3d ed.).

### C. The Court should stand on its order related to exhibits 2073 and 2087.

The government's arguments for reconsideration fall flat. First, the government has not asserted any basis for the Court to reconsider. Its motion lists three reasons with respect to exhibits 2073 and 2087: (1) it believes that the evidence is admissible and disagrees with the prior ruling, and the government provides some new information along with information previously presented; (2) it argues that Mitchell opened the door;[3] and (3) it expects Detective O'Bannon to testify that yellow switches are rare. The first argument fails to present any basis for reconsideration. *See United States v. Booker*, 613 F. Supp. 2d 32, 34 (D.D.C. 2009) ("[a]rguments that could have been, but were not, raised previously and arguments that the court has already rejected are not appropriately raised in a motion for reconsideration"). Despite the government's statements that the information raised in its motion to consider was "new," the information is in fact not new. While the government chose not to raise this information previously during arguments about these exhibits, the government had all of the information at that time and could have made the arguments then. No new evidence or information was discovered. The government just reorganized its argument, which is not sufficient to reconsider the Court's prior decision. The second argument will be addressed in the next section. And the third argument does not present any new information nor does it allege that the government's arguments were misunderstood: the government has always maintained that yellow switches are, to the government's knowledge, rare; and the Court has

---

[3] Whether Mitchell opened the door will be addressed later. Opening the door is a separate doctrine that does not implicate reconsideration.

4

always understood that the government intended to present this argument. None of the reasons listed by the government are grounds to reconsider regardless of which legal standard the Court uses. The government was given a full opportunity to make arguments about the admissibility of these exhibits prior to the start of trial and reconsideration is not appropriate now.

The government likewise cannot argue that the Court's prior rulings were clear error. "[R]ulings as to the admissibility of photographs are clearly within the discretion of the trial judge and will only be overturned upon showing an abuse of discretion." *See United States v. Akers*, 702 F.2d 1145, 1149 (D.C. Cir. 1983). Here, the Court acted properly within its discretion to exclude the photographs. Indeed, a similar ruling was made by Chief Judge Boasberg in *United States v. Cummings*, 1:25-CR-44-JEB. In that case the Chief Judge excluded photographs of firearms on the defendant's phone from trial when they were similar to a firearm the defendant was charged with possessing. The Court reasoned that the government could not prove the firearm was the same, and that the photographs were properly excluded as Rule 404(b) evidence. That reasoning was similar to the Court's reasoning in this case and was within the sound discretion of the trial judge. The Court also ruled that the exhibits were not admissible as intrinsic evidence because the photos were not from a date on or near when Mr. Mitchell is alleged to have aided and abetted the use of a firearm. Clearly this Court's decision, even if it were to reason differently today than it did when ruling on September 12, 2025, was well within the Court's discretion and was not clear error.

Moreover, Mitchell reasonably relied on the court's ruling in crafting his trial strategy. Mitchell would have spent a significant portion of his relatively short opening statement addressing the photographs of firearms. He also would have previewed the lack of additional information indicating that the photographs prove anything other than that Mitchell had

5

photographs of firearms on his phone. Mitchell's opening statement would have looked markedly different if the court had ruled one or both photographs of the firearms admissible.

The Court should refuse to reconsider because the government has not presented any basis for reconsideration under whichever standard the Court uses. The Court should also consider Mitchell's reliance on the Court's order. First, Mr. Mitchell clearly relied on the Court's order. Second, the Court stated on numerous times the purpose of the pretrial conferences was to allow the parties to know exactly what evidence would be admitted and excluded. Mr. Mitchell relied on the finality of the Court's orders, and no reason exists for the Court to reconsider.

### D. Mitchell did not open the door.

Generally, arguments that a party has "opened the door" invoke one of two doctrines: that of curative admissibility and specific contradiction. Though the government only mentioned curative admissibility, Mitchell briefs both for the Court's benefit. The doctrine of curative admissibility applies only when "the introduction of inadmissible or irrelevant evidence by one party justifies or 'opens the door to' admission of otherwise inadmissible evidence." *See United States v. Brown*, 921 F.2d 1304, 1307 (D.C. Cir. 1990) (finding that the defense did not open the door by eliciting admissible evidence on cross examination). The "doctrine of curative admissibility is one dangerously prone to overuse." *See United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971). "Introduction of otherwise inadmissible evidence under shield of this doctrine is permitted only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *Id*. Like in *Brown*, Mitchell did not introduce or allude to inadmissible evidence. He merely described the state of the evidence the jury could expect to see during trial: namely, that the jurors would not see any communications that prove Mitchell knew a firearm would be used in any robbery. The government did not suffer any prejudice by Mitchell pointing out what the

evidence would and would not show. Because Mitchell did not introduce or allude to inadmissible or irrelevant evidence and the government did not suffer any prejudice, this doctrine does not apply.

The government has failed to provide any citation that a party's description of the evidence during opening statements opens the door to excluded evidence. Nor can any argument be made that Mitchell mischaracterized the evidence or that these photographs are responsive to Mitchell's opening statement. First, the government points to the portion of Mitchell's opening statement about communications, and that paragraph is excerpted below:

```
1              And, third, you're going to know based on the
2      communications.  There's not a single text message, there's not
3      a single email, there's not a single instant message.  There is
4      nothing that indicates that Mr. Mitchell knew that anybody was
5      going to use a firearm during any of these robberies.
```

One of the government's photographs is contained within a message, but that message is from Mitchell to someone else not involved in the conspiracy (and whose identity is unknown and was not disclosed). The text of the message stated simply "trying swap [sic]." Nothing about this photograph or the accompanying message is responsive to Mitchell's argument that there were no communications about the use of a firearm in a robbery, and thus could not "cure" any prejudice. The message does not in any way relate to any robbery or any part of the conspiracy.

The second image is not from a message or communication at all: it is simply a photograph. How then could its admission be responsive to Mitchell's claim that no communications show that Mitchell knew someone would use a gun in a robbery? Because

7

neither message is responsive to Mitchell's opening statement, neither's admission could cure whatever prejudice, if any, the government suffered.

The related doctrine of specific contradiction also does not apply. Under the doctrine of specific contradiction, a party may introduce or cross a witness using inadmissible or collateral evidence to prove that a witness made a false statement while testifying. *See United States v. Craig*, 953 F.3d 8998, 904 (6th Cir. 2020) First, Mitchell did not make any false statement in his opening. Nor do any of the exhibits contradict any statement Mitchell made in his opening. Had Mitchell stated that he had never seen a firearm during the pendency of the conspiracy, the photographs could be admitted to contradict that false assertion. Similarly, if he had claimed broadly that no photographs existed anywhere that showed he had ever been in possession of a firearm, the photographs may be admissible to contradict that false assertion. Instead, Mitchell cabined this part of his opening to three categories: surveillance footage, witness testimony, and communications related to robberies. Neither of these photographs fit within any of these categories, and as such, they cannot specifically contradict any statement made by Mitchell.

Mr. Mitchell did not open the door to the admission of either of the photographs and the Court should stand on its prior ruling.

**E. The Court should stand on its order for exhibit 2059.**

Like with the previous exhibits, the government has not advanced any basis for the Court to reconsider its decision on exhibit 2059. That alone is reason to deny the government's motion. To the extent the government argues it needs exhibit 2059 to demonstrate that Mr. Mitchell has previously worn a shoe similar to one worn by an individual in some of the robberies (a photograph of Mitchell, who is flipping off the camera, along with Gause, who is smoking marijuana), other admitted photographs already accomplish the same purposes. Exhibit 1975 shows Mitchell wearing similar shoes to those

8

that are seen in surveillance footage of a robbery. Second, if the government believes it needs exhibit 2059 to show Mitchell and Gause know each other, other exhibits (for example, exhibit 1965) show Mitchell and Gause together, and numerous text and phone calls clearly demonstrate that they knew each other. As for exhibit 2059, Mr. Mitchell stands on his position that the Court should not reconsider its decision.

### F. Conclusion

The government has failed to provide any basis for the court to reconsider its prior rulings. Those rulings were within the Court's discretion and were relied upon by Mitchell. Nor did Mitchell open the door by correctly describing the state of the evidence during his opening statement. The Court should stand on its prior order.Mitchell asks the Court to deny the government's motion to reconsider the admission of exhibits 2059 – 2059.1, 2073 – 2073.1, and 2087.1 – 2087.3.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

 /s/ *Benjamin Schiffelbein*
Benjamin Schiffelbein
Diane Shrewsbury
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500